## Julius Wile et al. v. J. M. Gross.

1. Verdicts—*On Conflicting Evidence Conclusive.*—When the evidence is conflicting and the instructions, taken as a series, lay down the law correctly as applicable to the issues, the verdict will be conclusive.

Assumpsit, on a promissory note. Appeal from the Circuit Court of Peoria County; the Hon. Thomas M. Shaw, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

Arthur Keithley, attorney for appellants.

Isaac C. Edwards and Joseph A. Weil, attorneys for appellee.

Mr. Justice Lacey delivered the opinion of the Court.

This was a suit brought on a promissory note, given by appellee to appellants, wine merchants in New York City, dealing through wine merchants in Coblentz, Germany, dated November 9, 1893, due in forty-five days, for $385, drawing seven per cent interest, given for a shipment of Rhine wine from Coblentz to Peoria.

There was filed to the declaration a plea of the general issue, failure of consideration, and a fourth plea, setting up an off-set, averring that the note in question was made for the

price of some wine bought by the defendants of plaintiffs, under a warranty of its possessing certain qualities, and that in addition to the price of the wine, defendant was to pay the freight and duty, amounting to $309.99, and he alleges a breach of the warranty, and seeks to recover the sum so advanced by him.    There was a trial upon the issue, and verdict for appellee for $309.99, and judgment rendered thereon; from that judgment this appeal is taken.

The facts concerning the giving of the note were in substance as follows: A traveling man by the name of Blum, representing the appellants, called upon the appellee in the city of Peoria, in March, 1893, and procured his order for six casks of wine at ninety cents per gallon; duty, ocean and railroad freight in addition thereto was to be paid by the defendant; the appellants and defendant had previous dealing of the same character, and as claimed by appellee, it was understood by the parties at the time that the order was taken, that this wine was the property of F. Krote, and that it was then at Coblentz, Germany.  The contract was verbal, and as claimed by appellee, the wine was to be delivered to him in Peoria, " bottle ripe " and of the same quality that he had previously purchased of them.   The wine arrived in Peoria about the first of June, and it was to be paid for about the 10th of November; the appellee advanced the freight claimed for in his pleas.   About the time the note became due, November 9, 1893, appellee not being able to pay the amount, executed and sent to appellants, Messrs. Julius Wile, Bro. & Co., the note sued on, and he stated it would be paid when due.   Note was received and accepted on the 20th of November, same month.   The defendant, as he claims, discovered that the wine was not good, and wrote to the appellants, stating to them the fact and sent them a sample of each cask in a bottle.   The appellants received it and examined it, and pronounced a portion of the samples good and a portion not good, and in a letter to appellee laid the blame on him in not taking proper care of it, and tendered him some advice in regard to treating the casks that were good and disposing of those not good.   The main issue

presented before the jury was, whether the wine was inferior and of a bad quality, or whether it was mistreated by appellee after receiving it, and the proper care not given to it.

Appellants contended that it was the appellee's duty, in order to take proper care of the wine and keep it from souring, to keep the cask filled full to the bung hole with good wine of similar quality, and to keep the cellar at a low temperature in summer and not allow it to get too cold in winter.

Appellee on the other hand contended that he had performed all such duties; that the wine soured because it was an inferior quality, when it came; was not "bottle ripe;" nor was it as good as the wine he had previously purchased of appellants.

Upon these points the evidence was somewhat conflicting. There appeared to be no doubt from the evidence that the wine for some reason soured, and was good for nothing except for vinegar; but as to whether it was bad wine when sent, or became bad and spoiled on account of appellee's negligence, can not be certainly known. Carl Schmitt, a resident of Coblentz, who claimed to be the owner of the wine, and who shipped it, testified that he thought it was good, but could not state for certain whether he had examined it or not before it was shipped, but it was his habit to do so, and he thought he did so. On the other hand, the appellee testified that when the wine arrived it was roily, and though it did not appear to be sour it was not in good condition; that it was not an uncommon thing for wine to become cloudy on shipboard, and that it took sometimes three or four months for wine of that kind to clear up, so it could be told whether it was good or not, and that after this wine cleared up it was sour and worthless, and he immediately notified appellants. There was other evidence in the case corroborative of the one or the other of the contentions. We have carefully examined all the record and feel that although it was a matter of doubt which party was right, we do not see that the weight of evidence is so manifestly against the verdict, that we would be justified in re-

versing it on that account. The jury had all the witnesses before them save Carl Schmitt, whose deposition was read, and was better able to judge of their credibility than we are.

The appellants claimed to have been the agents of Fred Krote in Coblentz and Karl Schmitt claimed to own the wine, so that Krote was probably Schmitt's agent.

One of the contentions of the appellants is, that the wine was to be delivered to appellee on ship-board, in Coblentz, Germany, and that it might have spoiled on the voyage across the ocean. We think that the evidence fails to show that the wine was spoiled on the ocean voyage. It shows that wine may be roiled up in coming across the ocean, but if properly handled after it crosses, it will recover and be all right again. The only evidence tending to show that the delivery of the wine was to be made in Coblentz, at the point of shipment, was the fact that it was so shipped from there to appellee, and that he knew it was to be shipped, and the legal inference therefrom of the delivery of it at that point. This, however, was contradicted by appellee's uncontradicted testimony, that it was to be delivered in Peoria, the same as former shipments, and that it was to be " bottle-ripe, " and good as the same kind of wine in former shipments made by the appellants to him. Blum was the agent of appellants, who were located in New York City, and they were the agents of Fred Krote, and he of Karl Schmitt, and the contract was made in appellants' name, and the evidence was uncontradicted and positive that the wine was to be delivered in Peoria.

Under this state of the evidence, it was not very material whether appellants' refused instruction No. 3 was given or not, even if free from fault as to its structure.

Refused instruction No. 3 assumed that if defendant " bought of or through the plaintiffs, Rhine wine to be shipped from Coblentz, Germany, then there was a contract that the wine was purchased and to be delivered to appellee in Coblentz."

This instruction was misleading, and ignored the fact of a

positive contract of a delivery of the wine in Peoria. The instruction assumes that the wine was to be delivered in Coblentz, on a partial consideration of the evidence. It excluded appellee's evidence that it was to be delivered in Peoria, as well as all other circumstances tending to prove that fact.

It is complained that in some of the instructions for appellee, "that if the wine was spoiled when it arrived in the city of Peoria, they should find a verdict for appellee." It is claimed that this is erroneous because the place of delivery was not Peoria and because appellee could not tell that the wine was spoiled when it arrived.

Although it might not have been within the power of the appellee to have determined at the time whether the wine was spoiled when it arrived in Peoria, yet the evidence may have convinced the jury that such was the fact, and there was no evidence of any moment tending to show that the wine was spoiled on the voyage.

It is insisted that the appellee's instructions ignore the contention that the wine may have been spoiled by reason of appellee's negligence. We think the instructions are not open to such criticism. The assumption is, that, if appellee proved his plea he may have an off-set, but the jury are nowhere told that if the wine was injured through the neglect of the appellee, the plea could be sustained. Nothing was said in appellee's instructions about the rebuttal of the negligence of appellee, but the appellants' instructions fully informed the jury on that point. The jury would understand from the instruction as a whole that the proof of the one contention precluded the establishing of the other. The instructions were not, therefore, contradictory, but taken as a series, laid down the law correctly, as applicable to the issues. Seeing no error in the record, the judgment of the court below is affirmed.